UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| OSCAR PEREZ, | ) |
|          Petitioner, | ) |
|     v. | ) No. 2:19-cv-00401-JRS-MJD |
| RICHARD BROWN, | ) |
|          Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Oscar Perez for a writ of habeas corpus challenges a prison disciplinary proceeding identified as WVE 19-03-0098. For the reasons explained in this Entry, Mr. Perez's habeas petition must be **denied**.

**A.  Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B.     The Disciplinary Proceeding**

On March 27, 2019, Analyst S. Zimmerman issued a conduct report to Mr. Perez for a violation of Code B-220, engaging in an unauthorized financial transaction. Dkt. 10-1. The conduct report stated:

> On 3/27/2019 while monitoring the GTL Offender Telephone System I, Analyst S. Zimmerman did discover multiple phone calls made by Offender Oscar Perez #161430 to telephone number (931) 841-6792 discussing unauthorized financial transactions. During a call on 3/14/2019 Perez instructs the female callee to "shoot a message" to a telephone number that is associated with another offender who resides at WVCF (765-610-8581). (Ulises Ledo #943184) On 3/16/2019 the female callee tells Perez, "I sent the info", and on 3/17/2019 she informs Perez, "they already had the money." (Telephone Log attached)
>
> Policy 04-01-104(IX) specifically prohibits offenders from making unauthorized financial transactions to other offenders or their friends/family members.

*Id.* (mistakes in original).

The telephone log transcribes the calls at issue. Dkt. 10-2. The financial transactions policy was attached to the conduct report. Dkt. 10-3.

Mr. Perez engaged in three phone calls to the same callee on March 14, March 16, and March 17, 2019. Dkt. 10-2. In the first call, Mr. Perez says, "I need you to shoot a message man cause I need you to do the same thing you did last time, but a different number." *Id.* He gives the female callee the phone number 765-610-8581, which is associated with offender Ledo. When she asks what Mr. Perez wants him to say, he says "tell 'em that you're hollerin at 'em for Ole Man." Callee: "For the Ole Man?" Mr. Perez: "Yeah, and basically ask them for the same thing you did the last time." *Id*.

Two days later, in the second call, the callee told Mr. Perez she 'sent the info,' and Mr. Perez asked if they replied. Callee: "Uh huh." Mr. Perez: "What'd he say?" Callee: "Uh, just asked for details and stuff." He then said, "and you, uh, ironed em out for him, right?" *Id*.

On the third call the next day, the callee described her interaction with the person she had been texting with at Mr. Perez's direction. She said, "Dude, you need to tell your people…they got really rude with me. … They cussed me out practically. They was like 'Hey yo, next time you send me money, send me the f-ing name.'" *Id.* at 2. Mr. Perez responded, "Hey, woah, woah." *Id.* The callee referenced money two more times, stating, "And I don't even know who sent the money," and "No, I mean I did ask Sally but by that time they already had the money." *Id.*

Mr. Perez was provided notice of the offense on March 28, 2019. Dkt. 10-4. He requested offender Ledo as a witness. *Id.* Mr. Perez did not request any physical evidence. *Id.* Offender Ledo provided a statement saying, "As far as I'm aware Mr. Perez, did not send me any money." Dkt. 10-6. On March 29, 2019, Mr. Perez submitted a separate request for evidence linking phone number 765-610-8581 to the third phone call on the telephone log. Dkt. 10-7.

After a postponement, the disciplinary hearing was held on April 8, 2019. Dkt. 10- 8. At his hearing, Mr. Perez stated:

> There is 3 different calls that 3-17-19 call is not connected to the other phone calls. I have never asked to send money in any of the calls. They call on 3-17-19 is in reference to my family and the callee clearly states she does not know who sent message.

*Id.* (mistakes in original).

The hearing officer found Mr. Perez guilty of engaging in an unauthorized financial transaction based on staff reports, the statement of the offender, evidence from witnesses, and the phone logs. *Id.* The hearing officer reasoned, "DHO believes conduct to be true and accurate DHO took into account conduct, witness statement, offender statements, and phone logs." *Id.* The recommended and approved sanctions were loss of commissary privileges, disciplinary restrictive housing, 45 days of lost credit time, and demotion of one credit class. *Id.* The hearing officer imposed the sanctions because of the seriousness and nature of the offense, Mr. Perez's attitude

and demeanor during the hearing, the degree to which the violation disrupted or endangered the facility, and the likelihood of the sanction having a corrective effect on Mr. Perez's future behavior. *Id*.

Mr. Perez's appeals to the Facility Head and to the Final Reviewing Authority were denied. Dkts. 10-10, 10-11, 10-12. This habeas action followed.

**C. Analysis**

Mr. Perez alleges that his due process rights were violated in the disciplinary proceeding. His claims are: 1) insufficient evidence; 2) his witness was not permitted to testify in person; and 3) the hearing officer was not impartial.

Policy 04-01-104(IX) prohibits financial transactions between offenders. Dkt. 10-3. It is a Class B offense to engage in or possess:

> materials used for unauthorized financial transactions. This includes, but is not limited to, the use or possession of identifying information of credit cards, debit cards, or any other card used to complete a financial transaction. This includes the *discussion of engaging in unauthorized financial transaction(s) with any other person*.

Dkt. 10-13 at 6 (emphasis added).

Mr. Perez first argues that on the March 14 call, there was no mention of money at all. Dkt. 4 at 4. He admits that during the March 17 call, the callee did mention money but said nothing about another offender or his family/friends. *Id.* He asserts that it does not violate policy to obtain funds from family and friends. *Id.* He further contends that the three calls are unrelated and do not support the charge. *Id.*

"The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (citation and quotation marks omitted); *see also Ellison v. Zatecky*, 820 F.3d

271, 274 (7th Cir. 2016) ("a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."); *Donelson v. Pfister*, 811 F.3d 911, 916 (7th Cir. 2016) ("Under *Hill*, 'the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'") (quoting *Hill*, 472 U.S. at 455-56)). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). The conduct report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

The telephone log of the three conversations makes it clear that they were related. In the first call, Mr. Perez asks the callee to send a message and in the following two calls the callee reported what happened in response to her message. She complained that she was "cussed out" and was told "next time you send me money, send me the f-ing name." Dkt. 10-2 at 2. There is evidence that the phone number at issue was related to another offender and that the callee sent money as requested by Mr. Perez. The conduct report and telephone logs constitute sufficient evidence to support the charge.

Mr. Perez next argues that he was denied a witness because offender Ledo was available but not brought to the hearing. Dkt. 4 at 5. He states that no reasons were given for not bringing Mr. Ledo to the hearing and there were no security issues alleged. *Id*. The respondent asserts that any error in this regard would be harmless because Mr. Perez did not state what clarification Mr. Ledo would have made if he testified in person. In his reply, Mr. Perez argues that "offender Ledo could have clarified why petitioner did not send him any money. He could [sic] stated why petitioner sent a message to a phone number associated with him. All of which were the key components of the disciplinary charges at hand." Dkt. 15 at 2-3. For support, Mr. Perez cites to

5

the Court's ruling in *Adams v. Superintendent*, 2:17-546-JMS-MJD.

When an inmate requests to call a witness at a disciplinary hearing, he is presumptively entitled to present the witness's live testimony as opposed to a written statement. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We are . . . unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of 'calling a witness' even when live testimony would be feasible."); *Doan v. Buss*, 82 F. App'x 168, 170–71 (7th Cir. 2003) (rejecting the contention that "under *Wolff* oral testimony is not required as long as written statements are obtained"); *Ashby v. Davis*, 82 F. App'x 467, 471 (7th Cir. 2003) (holding that "[t]he submission of a written [witness] statement is not by itself a valid reason for not appearing," and explaining that "[l]ive testimony is the presumption absent a valid reason for proceeding differently").

An error is harmless if the petitioner does not show prejudice. *See Jones v. Cross*, 637 F.3d 841, 846-47 (7th Cir. 2011). Here, offender Ledo said that "As far as I'm aware Mr. Perez, did not send me any money." Dkt. 10-6. The hearing officer considered this statement. Even if Mr. Ledo had continued to deny receiving money directly from Mr. Perez, this would not alter what was said during the phone calls at issue and would therefore not have changed the outcome of the hearing. Mr. Perez has not shown that any denial of live testimony resulted in prejudice.

In addition, this case is different than the case cited by Mr. Perez, *Adams v. Superintendent*, 2:17-546-JMS-MJD (S.D. Ind. Aug. 27, 2018). In *Adams*, the respondent failed to acknowledge that a petitioner is entitled to live testimony unless a valid reason is given. The respondent also failed to provide any justification for allowing only a written statement. *Id.* In this case, the respondent essentially conceded the error but reasonably asserted that because there was no prejudice, any error was harmless.

For his final claim, Mr. Perez alleges that the hearing officer was not impartial as evidenced by the fact that a physician who saw him when he was processed into segregation after he was found guilty told him that she knew he was coming. He further alleges that the Unit Team Manager had told the physician to prepare the paperwork the week before the hearing was conducted. Dkt. 4 at 5-6. Mr. Perez argues that the hearing officer must have made his decision known even before the hearing was held and that the Unit Team Manager must have influenced the decision. He also argues that the Unit Team Manager must have assumed that Mr. Perez would be found guilty. Dkt. 15 at 4-5.

Inmates are entitled to an impartial decision-maker. A prison official who is "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof," may not adjudicate those charges. *Piggie v. Cotton,* 342 F.3d 660, 667 (7th Cir. 2003). "Adjudicators are entitled to a presumption of honesty and integrity." *Id.* at 666. "[T]he constitutional standard for impermissible bias is high." *Id.* There is no evidence that the hearing officer was involved in the underlying events involved in this case. The circumstances Mr. Perez complains about indicate that the segregation unit was prepared for his arrival if he was found guilty, but they do not rebut the strong presumption that the hearing officer was not biased. There is no evidence that the hearing officer was involved in the investigation of the phone calls. No due process violation occurred in this regard.

Mr. Perez was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Perez's due process rights.

7

### D. Conclusion

For the above reasons, Mr. Perez is not entitled to the relief he seeks. His petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 6/4/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

OSCAR PEREZ
T702665
Alexander Correctional Institution
633 Old Landfill Road
Taylorsville, NC 28681

Abigail T. Rom
INDIANA ATTORNEY GENERAL
abby.rom@atg.in.gov